UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civ. No. 11-3350 (JRT/LIB)

Larry R. Anderson,

    Plaintiff,

v.

Al Dumbleton, Scott Rettke and

Barb Winterfeld.

    Defendants.

**REPORT AND RECOMMENDATION**

---

Larry R. Anderson, *pro se*

Jason M. Hill, Esq., on behalf of Defendants.

_____

Leo I. Brisbois, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Defendants' motion for summary judgment and Plaintiff's motion to deny defendants' motion for summary judgment. [Doc. Nos. 21, 32]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' motion for summary judgment be granted [Doc. No. 21]; and Plaintiff's motion to deny defendants' motion for summary judgment be denied [Doc. No. 32].

**I.    BACKGROUND**

    **A.    Procedural**

Plaintiff Larry Anderson ("Anderson") was arrested and detained in Scott County Jail on August 27, 2011; and his amended complaint is dated September 28, 2011. (Am. Compl. [Doc. No. 1-1]).  The amended complaint was filed in Scott County District Court, and Defendants received the summons and amended complaint on October 21, 2011.  (Notice of Removal, [Doc. No. 1] ¶ 6).  Defendants then removed the amended complaint to this Court on November 15, 2011.  (Id.)  Anderson brings this lawsuit alleging the following counts:   Count One- denial of contact with a lawyer; Count Two- denial of legal materials; Count Three- violation of humane treatment; Count Four- interference with a felony investigation;[1] Count 5- theft by swindle; Count 6- violation of religious rights; and Count 7- refusal of medical attention.  (Am. Compl.)  For relief, Plaintiff requests money damages.

Defendants move for summary judgment for the following reasons:   1) Anderson's official capacity claims against the defendants constitute claims against Scott County; and Anderson failed to allege sufficient facts to maintain Section 1983 claims against Scott County; 2) Anderson was not denied communication with counsel or denied access to the courts; 3) Anderson's due process rights were not violated by his housing placement; 4) Anderson's right to free exercise of religion was not violated; 5) Defendants did not deliberately disregard Anderson's serious medical need for dental treatment; 6) Defendants are entitled to qualified immunity for constitutional claims; 7) Defendants are entitled to official immunity for state law claims.  (Defs' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs' Mem.") [Doc. No. 23]).

---

[1] There are two counts numbered "4" in the amended complaint; therefore, the Court has renumbered the counts.

Anderson responded to Defendants' motion for summary judgment by filing a motion to deny defendants' motion for summary judgment ("Mot. to Deny") [Doc. No. 32]). In the caption of his motion, Anderson wrote "INDIVIDUAL CAPACITYS." Anderson contests certain statements in the affidavits offered by Defendants. He requests that the Court obtain a videotape of the instance when he was provided three law books to view for ten minutes. Anderson also requests a continuance so he can find an attorney to represent him. Anderson submitted a number of exhibits in support of his claims. [Doc. No. 33].

**B.     The Allegations in Anderson's Complaint**

Anderson was detained in Scott County Jail pending charges that he violated a domestic abuse no contact order. (Defs' Mem. at 2). In Count One, Anderson alleges Defendants denied his numerous requests to contact his attorney by mail or telephone. (Am. Compl. at 1-2). He alleges he was not allowed to communicate with an attorney between August 27, 2011 and September 29, 2011. (Id.) He also states he was allowed to use the phone to call his attorney on August 28, 2011, but the phone number was restricted, and no one responded to his requests for help. (Id. at 2).

In Count Two, Anderson claims Defendants denied his multiple requests over the course of thirty days to use the law library and use a computer for legal work. (Id. at 2). In Count Three, Anderson alleges "violation of humane treatment" because he was placed in segregation for allegedly calling his wife [allegedly in violation of a no contact order]. (Id. at 3). Defendants attempted to punish Anderson further for the infraction, in violation of the double jeopardy clause. (Id.) He also alleges discrimination because

other inmates in segregation were allowed to make phone calls. (Id.) He was in segregation for fourteen days before a hearing was held. (Id. at 4).

In Count Four, Anderson alleges Defendants Rettke and Winterfeldt[2] interfered with a felony investigation by providing him with evidence of phone calls that he made before any charges were filed against him for making those calls in violation of a protective order. (Id.) In Count Five, Anderson alleges theft by swindle because Defendants charged him $10.69 for phone cards; and the other county correctional facilities charge $10.00. (Id. at 5). In Count Six, Anderson asserts he requested religious activities and was ignored or denied. (Id.) In Count Seven, he alleges his requests for treatment of broken teeth on November 17, 2011 were ignored or denied "as of to date, 10.5.2011."[3] (Id. at 6).

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Summary Judgment Standard

Summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the evidence, and the inferences to be drawn from the underlying facts, in the light most

---

[2] The Court notes Defendant Barb Winterfeldt's name was misspelled in the amended complaint. See Affidavit of Barb Winterfeldt [Doc. No. 25].

[3] Anderson signed and dated the amended complaint on September 28, 2011, but apparently he did not complete the amended complaint on that date because he alleges acts and omissions of Defendants through October 5, 2011; and the most recent exhibit attached to his amended complaint is dated October 21, 2011.

4

favorable to the nonmoving party. Watson v. Jones, 980 F.2d 1165, 1166 (8th Cir. 1992).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

If a party fails to address another party's assertion of fact as required, the court may consider the fact undisputed for purposes of the motion and grant summary judgment if appropriate. Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968)).

### 2. Failure to State Section 1983 Claims Against Defendants In Their Official Capacity.

Public officials may be sued in their individual and official capacity, but to sue in the officials' individual capacity, the plaintiff must give notice to the defendants by stating "individual capacity" expressly in the complaint. Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007). If the complaint does not expressly identify the defendants in their

5

individual capacity, courts assume the defendants are being sued in their official capacity only. *Id.*

Claims against public officials in their official capacity are treated as claims against their public employer. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985). Local governments are only liable under Section 1983 "for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)). A local government is only liable if the plaintiff proves that a local government policy or custom was the "moving force" behind the constitutional violation. Russell v. Hennepin County, 420 F.3d 841, 848 (8th Cir. 2005) (quoting Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)).

### B. Official Capacity Claims

Anderson did not expressly sue Defendants in their individual capacity in the amended complaint. Therefore, the defendants were sued in their official capacity. Even given a liberal construction of the amended complaint, the Court cannot find an allegation that a Scott County government policy, custom or practice was the moving force behind any of Anderson's constitutional claims. Thus, Defendants motion for summary judgment on Counts One, Two, Three, Six and Seven should be granted for failure to state cognizable official capacity constitutional claims against the defendants.

Although it was too late to amend the complaint in this case, Anderson inserted the words "individual capacity" in the caption of his motion to deny defendants' motion for summary judgment. The Court will address Anderson's alternative individual

6

capacity claims against Defendants.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*pro se* documents must be liberally construed, and *pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers).

### C. State Law Claims

#### 1. Interference with a felony investigation

Anderson has not alleged a specific state civil law that Defendants Rettke and Winterfeldt violated by providing Anderson with phone records that might be evidence in a felony investigation.  The Court cannot discern from the complaint how giving Anderson copies of phone records interfered with a felony investigation; and how that conduct harmed Anderson.  Count Four should be dismissed because the Court cannot determine a viable claim.

#### 2. Theft by swindle

Defendants offered evidence that they charge the price charged by their vendor for phone cards.  (Affidavit of Cassie Wolpern, ¶¶ 2-4 [Doc. No. 26]). The Court finds no merit to Anderson's claim of theft by swindle because he was charged $10.69 for a phone card in Scott County jail, and other county jails in Minnesota charge $10.00.  Count Five should be dismissed.

### D. Individual Capacity Claims

#### 1. Denial of contact with attorney

Anderson alleges Defendants prevented him from contacting his attorney by mail or phone as of September 28, 2011.  (Am. Compl. at 2).  Anderson also admits he attempted to call his attorney but the number was restricted.  (Id.)  He alleges Defendants did not respond to his subsequent requests.  (Id.)

Defendants replied that Anderson met with his attorney in person on September 8, 2001 and September 12, 2011. (Defs' Mem. at 3, Affidavit of Jason M. Hill ("Hill Aff."), Ex. C [Doc. No. 24-1] at 17-18). On September 15, 2011, Anderson informed Scott County officers he did not want to attend court that day because he had not paid his private attorney; and he did not want to appear in court without an attorney. (Id. at 3, and Hill Aff., Ex. D [Doc. No. 24-2] at 12). Anderson did not want a public defender. (Id.) Thereafter, Anderson asked to contact a lawyer. (Id., Hill Aff., Ex. E [Doc. No. 24-2] at 19). When Anderson complained that he could not get through on the phone, Scott County officers said the phones were working but the attorney's office had to be prepared to accept the calls. (Id.; and Affidavit of Barb Winterfeldt ("Winterfeldt Aff."), ¶ 2). However, there was a phone problem, an issue with a new security system; but the issue was resolved on September 30, 2011. (Defs' Mem. at 4; Hill Aff, Ex. D at 13). Anderson then met with an attorney on six occasions between September 30, 2011 and October 19, 2011. (Defs' Mem. at 3-4; Hill Aff., Ex. C at 17-19, 21-23).

In Reply, Anderson said the attorney he met with on September 8 and 12 was not his attorney, because the attorney wanted money. (Mot. to Deny at 2). He claims he did not say he did not want a public defender. (Id.) Anderson asserted the phone problem had nothing to do with his attorney's office; and he had no contact with an attorney for 32 days, August 27, 2011, his arrest date, through September 30, 2011. (Id. at 3).

To establish a constitutional claim of denial of access to the courts under the First Amendment, pretrial detainees must show prejudice. Thomsen v. Ross, 368 F.Supp.2d 961, 974 (D.Minn. 2005). Anderson does not deny that he had the

8

opportunity to meet with an attorney twice in early September, although he did not ultimately hire that attorney. Then, he was allowed to call his public defender, although it took time before he got through because there was a problem with a new phone system. Although there was a short delay in time before Anderson could reach his public defender once he decided not to hire a private attorney, Anderson has not pled facts constituting prejudice; and the claim should be dismissed.

### 2. Denial of access to legal materials

Anderson alleged he requested numerous times to use the law library, and for thirty days, his requests were denied. (Am. Compl. at 2). Defendants responded that their first record of a request by Anderson to review legal materials was on September 22, 2011, and his request was initially denied on September 25, 2011, because he was classified as high risk. (Defs' Mem. at 5; Hill Aff., Ex. D at 12, Ex. E at 22). However, Anderson was informed on September 26, 2011 that his request was granted, but the jail did not have a computer with access to legal materials. (Defs' Mem. at 5; Ex. E at 24). Anderson was allowed to view legal materials in a conference room on September 30 and October 1, 2011. (Defs' Mem. at 6, Winterfeldt Aff., ¶¶ 3-6; Hill Aff., Ex. C at 12-16). In Response, Anderson asserted he was only provided three law books for ten minutes on one occasion. (Mot. to Deny at 1). Anderson also asserts there are computers in the library for offender use, but he was not allowed to use them. (Id.)

To state a claim that an inmate's limited access to a law library violated his right to meaningful access to the courts, the inmate "must assert that [he] suffered an actual injury to pending or contemplated legal claims." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996). Theoretical inadequacies are insufficient. *Id.;* see also Hartsfield v.

Nichols, 511 F.3d 826, 832 (8th Cir. 2008) (speculative claim of prejudice was insufficient to state claim for deprivation of meaningful access to the courts). Anderson's claim for denial of access to the courts fails because Anderson did not allege an actual injury.

### 3. Claims regarding administrative segregation

Anderson's allegations are liberally construed to contain several claims concerning his placement in segregation. First, he alleges "violation of humane treatment," which the Court interprets as an Eighth Amendment claim based on cruel and unusual punishment. Anderson's only specific allegations about the living conditions in segregation were that he was restricted from use of the canteen, time out of the cell, use of the library, use of phones, access to the living unit, and use of programs. (Am. Compl. at 3). Second, Anderson alleges discrimination, presumably a claim for violation of the equal protection clause, based on denial of his requests for certain privileges while similar requests by others in his unit were granted. (Id.) Third, he alleges violation of the double jeopardy clause on the basis that he was punished by placement in segregation, and further punishment for the same conduct was also contemplated at an upcoming hearing. (Id.) Fourth, he alleges he was in segregation for fourteen days before he had a hearing, which the Court interprets as a due process claim. (Id. at 4).

Defendants assert Anderson was reclassified to high risk and placed into a different housing unit as the result of an incident report alleging he violated a domestic abuse no contact order while in jail; and that he used PIN numbers from other inmates to do so. (Defs' Mem. at 6-7; Hill Aff., Ex. H [Doc. No. 24-3] at 9). The purpose of the

housing transfer was to ensure he would not have the opportunity to repeat this conduct; it was not punishment. (Defs' Mem. at 7; Winterfeldt Aff., ¶¶ 7, 8). Anderson was served a Notice of Violation on September 22, 2011, but disciplinary sanctions were not imposed at that time, pending a disciplinary hearing on October 5, 2011. (Id.; Winterfeldt Aff., ¶ 8; and Hill Aff., Ex. H at 10). After Anderson was found in violation of jail rules, he was locked down for three days, and lost visitation and telephone privileges from October 7-17, 2011. (Id.; Hill Aff., Ex. H at 14]). On October 18, 2011, Anderson's housing classification was reconsidered, but he remained classified as high risk. (Id.; Hill Aff. Ex. D at 3; and Ex. E at 31). His housing classification was reconsidered again on October 25, 2011. (Defs' Mem. at 8; Hill Aff., Ex. E at 34; Ex. I [Doc. No. 24-3] at 2-3).

To establish an Eighth Amendment violation, the inmate must show he was denied the "minimum civilized measures of life's necessity" as a result of placement in segregation. Stanko v. Patton, 568 F.Supp.2d 1061, 1074 (D.Neb. 2008) (quoting Rahman X v. Morgan, 200 F.3d 970, 974 (8th Cir. 2002). This requires a showing that the "alleged deprivation, viewed objectively, is 'sufficiently serious' and that the prison officials' actions, viewed subjectively, demonstrate a 'deliberate indifference' to the prisoner's health or safety." Rahman X, 200 F.3d at 974 (quoting Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998)); Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference is the appropriate standard for pretrial detainee claims that prison officials denied adequate food, shelter, clothing, medical care and reasonable safety). None of the restrictions associated with the housing placement or subsequent three-day lockdown alleged by Anderson are sufficiently serious to rise to the level of an

Eighth Amendment violation. See Rahman X, 200 F.3d at 974 (26 months in segregation cell was not sufficiently serious); Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003) (37 days without out-of-cell exercise, contact visitation or religious services does not establish an Eighth Amendment violation)). Even if the Court interprets this claim as one of violation of Anderson's right to substantive due process, the claim would still fail. See Phillips, 320 F.3d at 847 (prisoner has a liberty interest, protected by the Due Process clause of the Fourteenth Amendment, to be free from restraint that imposes an atypical and significant hardship in relation to the ordinary incidents of prison life, but demotion to segregation, even without cause, is not itself an atypical and significant hardship).

Anderson also alleged discrimination. To establish an equal protection claim under the Fourteenth Amendment, the inmate must allege: 1) he was a member of a protected class; 2) he was treated differently from similarly situated classes of inmates; 3) the difference in treatment bore no rational relation to any legitimate penal interest; and 4) the discrimination was intentional. Phillips, 320 F.3d at 848. Anderson did not allege he was a member of a protected class. Thus, his equal protection claim fails.

Anderson's claim that he was unlawfully held in segregation for fourteen days before a hearing was held is construed as a due process claim. Conditions or restrictions placed on pre-trial detainees only implicate the protection of the due process clause if the conditions or restrictions amount to punishment of the detainee. Smith v. Copeland, 892 F.Supp. 1218, 1227 (E.D. Mo. 1995) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)). A particular restriction or condition of pretrial detention is not

punishment if it is reasonably related to a legitimate governmental objective." Whitfield v. Dicker, 41 Fed.Appx. 6 (8th Cir. 2002).

Defendants submitted exhibits demonstrating Anderson was transferred to a different housing unit, the "G-Pod," based on a housing classification of being high risk. (Winterfeldt Aff., ¶ 7; Hill Aff., Ex. H at 9). The risk was that he would use other inmates' PIN numbers to make calls to a protected person in violation of a domestic no contact order. (Winterfeldt Aff., ¶ 7). Because this is a legitimate governmental objective, the due process claim should be dismissed. See Meyer v. Rohrscheib, No. CV-09-22-EFS, 2010 WL 1416137 at *3 (E.D. Wash. April 5, 2010) (jail had legitimate interest in stopping ongoing criminal activity perpetrated from the jail)).

As to the lockdown and other restrictions imposed after the disciplinary hearing, Anderson received the following: 1) advance notice on September 22, 2011 of the claimed violation; 2) a written statement of the evidence relied on and reason for the discipline; 3) and a hearing on October 5, 2011. (Hill Aff., Ex. H at 9-14). Thus, procedural due process was satisfied. See Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974) (establishing due process requirements for prison disciplinary proceeding).

Finally, Anderson's double jeopardy claim fails. The double jeopardy clause does not apply to administrative proceedings for violations of prison disciplinary rules. Kerns v. Parratt, 672 F.2d 690, 691 (8th Cir. 1992) (per curiam)). All claims in Count Three should be dismissed.

### 4. Exercise of religion

Anderson alleges he "asked about some kind of religious activities," and his request was not honored as of one month later. (Am. Compl. at 5). Defendants

submitted an Inmate General Request Form showing Anderson requested a Native American pipe ceremony, but the request was denied based on a safety hazard from smoke and fire. (Defs' Mem. at 8-9; Winterfeldt Aff., ¶ 9; Hill Aff., Ex. E at 23). Anderson was asked if there was a religious alternative to his request, but he did not respond. (Id.) A "prison violation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987). Anderson does not have a claim for a constitutional violation because prohibition of ceremonial pipes is necessary to address security risks. Bettis v. Delo, 14 F.3d 22, 23 (8th Cir. 1994). Anderson did not specifically request any other religious activity.

### 5. Dental treatment

Anderson alleges that on September 17, 2001, he told a nurse in the jail that he had two broken teeth and required treatment. (Am. Compl. at 6). He later informed the nurse that he broke another tooth and was in pain. (Id.) He was given Orajel but no dental attention for eighteen days. (Id.) Defendants offered evidence of the following. Defendants had no record of Anderson requesting dental treatment until September 22, 2011, six days prior to when he filed this lawsuit. (Defs' Mem. at 21; Hill Aff., Ex. J [Doc. No. 24-4] at 11). The nurse gave Anderson Orajel and attempted to schedule a dental appointment for him. (Hill Aff., Ex. C at 9, Ex. D at 5). Anderson saw a dentist twice, October 7 and October 15, 2011. (Hill Aff., Ex. C at 9, Ex. D at 6). Anderson had decayed and infected teeth, not broken teeth, but refused the dentist's offer to remove the infected tooth that could not be saved. (Hill Aff., Ex. D at 6-7; Ex. J [Doc. No. 24-4] at 13-20.) Anderson would not be treated with fillings, root canals and crowns unless he

14

had insurance and could prepay the copay. (Ex. J at 19-20). Anderson was provided antibiotics and prescription pain medication from the dentist; and Anderson's prescriptions were changed when he complained of possible allergies and ineffectiveness. (Hill Aff., Ex. J at 13-20). In Reply, Anderson said he was in pain for thirty days with three broken teeth before a poor attempt was made to treat him. (Mot. to Deny at 3).

For an inmate to establish an Eighth Amendment violation for failure to provide adequate medical treatment, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The Eighth Circuit applies the deliberate indifference standard of Estelle to pretrial detainee claims that prison officials violated the constitution by ignoring a serious medical need, although the Supreme Court has noted a difference between the substantive due process protections of pretrial detainees and Eighth Amendment protections of convicted inmates. Butler, 465 F.3d 340, 344-45 (citing Bell v. Wolfish, 441 U.S. 520 (1979)).

Deliberate indifference has an objective and a subjective component. Id. at 345. The objective component requires proof that the inmate was exposed to an unreasonable risk of serious harm to his health. Id. (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The subjective component requires proof that the defendants "'actually knew of and *recklessly disregarded'* this substantial risk of serious harm." Id. (emphasis in original) (quoting Pietrafeso v. Lawrence County, S.D., 452 F.3d 978, 983 (8th Cir. 2006); Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Tooth pain with evidence of infection constitutes a serious dental need. Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011) (collecting cases). However, Anderson did not cite to anything in the record to establish the presence of a genuine dispute of the facts contained in Defendants' exhibits in support of their motion for summary judgment. Thus, undisputed evidence indicates Anderson first requested dental treatment on September 22, 2011; he saw a dentist on October 7 and October 15, 2011; his infected teeth were treated with antibiotics; he was given prescription pain medication; and Anderson declined the dentist's offer to extract the infected teeth. Based on these facts, Anderson cannot establish Defendants were deliberately indifferent to his medical and dental needs. See Holden, 663 F.3d at 343 (inmate's later refusal to have tooth extracted undermined his claim of deliberate indifference); Pietrafeso, 452 F.3d at 567-68 (deliberate indifference requires more than disagreement with treatment decisions); Greywind v. Podrebarac, 731 F.Supp.2d 931, 936 (D.N.D. 2010) (denying preliminary injunctive relief where inmate's tooth infection was treated with antibiotics and pain medication, and offer to extract tooth was declined by inmate).

### E.     Request for Continuance

In his motion to deny defendants' motion for summary judgment, Anderson requests a continuance, claiming he has a procedural right to an attorney; and he has not been able to obtain counsel while in prison. (Mot. to Deny at 4). There is no constitutional or statutory right to counsel in a civil case. Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008). This Court denied Anderson's last motion for a continuance that was also based on his inability to obtain an attorney in this matter. (Order [Doc. No. 31]). Once a pro se litigant has filed a civil case, he must be prepared to represent

himself if he cannot obtain counsel.  This case was filed more than one year ago; and "[l]itigants do not have an absolute right to continuances to prepare for trial or to obtain counsel." Schooley v. Kennedy, 712 F.2d 372, 374 (8th Cir. 1983).  The request for a continuance should be denied.

### F. Request to Obtain Videotape

Anderson's request to obtain videotape evidence should be denied for two reasons.  First, the discovery period has closed in this matter.  Second, even if Anderson's allegation that he only received ten minutes, on one occasion, to look at three law books is true, his denial of access to the courts claim fails because he did not allege actual injury.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** THAT:

1. Defendants' motion for summary judgment [Doc. No. 21] be GRANTED;

2. Plaintiff's motion to deny defendants' motion for summary judgment [Doc. No. 32] be DENIED;

3. The case be dismissed with prejudice and judgment be entered.

Dated this 2nd day of January, 2013

                                              s/Leo I. Brisbois
                                              LEO I. BRISBOIS
                                              United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 16, 2013, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.